U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JAN 0 8 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| GETZELL J. MURRELL, SR.,<br>Plaintiff<br><br>VERSUS<br><br>CARL CASTERLINE, et al.,<br>Defendants | CIVIL ACTION<br>SECTION "P"<br>NO. CV03-0257-A<br><br>JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before this court is a complaint filed pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999 (1971),[1] by pro se plaintiff Getzell J. Murrell, Sr. ("Murrell"), in forma pauperis, on January 10, 2004, and amended on September 24, 2004 (Doc. Item 22) and October 21, 2004 (Doc. Item 29). The remaining defendants are Carl Casterline ("Casterline") (former warden of the United States Penitentiary in Pollock, Louisiana ("USP-Pollock")), Robert Tapia ("Tapia") (current warden of USP-Pollock), and correctional officers Cindy Pike

---

[1] <u>Bivens</u> defendants are federal officials brought into federal court for violating the Federal Constitution. <u>Bivens</u>-type actions may be brought only against federal agents and not federal agencies. <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 486, 114 S.Ct. 996, 1006, 127 L.Ed.2d 308 (1994); <u>Whitley v. Hunt</u>, 158 F.3d 882 885 (5th Cir. 1998). Under <u>Bivens</u>, a plaintiff may recover damages for any injuries suffered as a result of federal agents' violations of his constitutional rights. <u>Channer v. Hall</u>, 112 F.3d 214, 216 (5th Cir. 1997).

("Pike"), Steve Aycock ("Aycock"), Harris Hatchett ("Hatchett"), Les Phillips ("Phillips"), Frederick Jefferson ("Jefferson"), M. Cannon ("Cannon"), and Lane Gremillion ("Gremillion"). In his sole remaining claim for relief, Murrell alleges the named defendants were deliberately indifferent to his serious medical needs by deliberately exposing Murrell, a non-smoker, to environmental tobacco smoke ("ETS") and failing to enforce the prison smoking policies since 2001, despite Murrell's doctor's recommendation to avoid ETS. Murrell alleges that his exposure to ETS caused him to suffer migraine headaches, dizziness, eye irritation, sinus problems, breathing problems, hypertension, and coughing.[2] Murrell is presently incarcerated in USP-Hazelton in Bruceton Mills, West Virginia.

For relief, Murrell asks for a jury trial and monetary damages. Murrell's claims for injunctive relief were previously dismissed because Murrell is no longer incarcerated at USP-Pollock (Doc. Item 96). Defendants filed a motion for summary judgment, supported by a statement of undisputed facts and documentary evidence (Doc. Item 117), which is disputed by Murrell (Doc. Item 125). Defendants' motion is now before the court for disposition.

---

[2] Murrell filed a similar claim against a federal prison in Texas. Murrell v. Chandler, 109 Fed.Appx. 700 (5th Cir. 2004)("To the extent that Murrell alleged that his future health was harmed by prolonged exposure to ETS and that prison officials were deliberately indifferent to his health, he states a claim for which relief may be granted"). That case is still pending in the Eastern District of Texas, No. CV01-0184.

## Law and Analysis

### The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving

3

party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1959). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

Murrell's ETS Claims

Murrell contends the defendants effectively denied him medical care by knowingly exposing him to environmental tobacco smoke ("ETS") at USP-Pollock. Murrell argues that defendants Casterline, Tapia, Phillips, Jefferson, Pike, Aycock, Cannon, Hatchett, and Gremillion have failed to enforce the dormitory smoking policies,

4

forcing him to "live in an environment filled with high levels of environmental tobacco smoke...that poses an unreasonable risk of serious damage to plaintiff's present and future health because of it's cancerous and chemical ingredients." Murrell alleges his exposure to ETS has caused him to suffer migraine headaches, dizziness, eye irritation, sinus problems, breathing problems, hypertension, and coughing. Murrell thus claims he was subjected to unconstitutional conditions of confinement which resulted in a denial of proper medical care.

In <u>Helling v. McKinney</u>, 509 U.S. 25, 33-35, 113 S.Ct. 2475, 2481-482 (1993), the Supreme Court held that prison officials may violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to an excessive level of environmental tobacco smoke ("ETS"). The Supreme Court identified both objective and subjective elements. Objectively, a plaintiff must show that he himself is being exposed to unreasonably high levels of ETS. The objective factor not only embraces the scientific and statistical inquiry into the harm caused by ETS, but also whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. Subjectively, the plaintiff must prove deliberate indifference, considering the officials' current attitudes and conduct and any policies that have been enacted. Therefore, to obtain relief, a prisoner must prove not only that the

level of ETS to which he is exposed is unreasonable, but also that prison officials have shown "deliberate indifference" to the health risks associated with second hand smoke. The adoption of a smoking policy bears heavily on the inquiry into deliberate indifference. See also, Whitley v. Hunt, 158 F.2d 882, 887-88 (5th Cir. 1998); Rochon v. City of Angola, 122 F.3d 319, 320 (5th Cir. 1997); Wilson v. Lynaugh, 878 F.2d 846 (5th Cir.), cert. den., 493 U.S. 969, 110 S.Ct. 417, 107 L.Ed.2d 382 (1989).

Murrell claims he has a right to live in a "tobacco free environment." The Bureau of Prisons Inmate Handbook states inmates have "the right to a safe, clean and healthy environment, including smoke-free living areas" (Doc. Item 125, Pl. Ex. Appendix 1). Essentially, Murrell claims he was subjected to unconstitutional conditions of confinement due to unnecessarily high levels of environmental tobacco smoke ("ETS") in violation of the Eighth Amendment and he was denied medical care for a serious medical need through exposure to ETS.

1. Objective Component

Murrell alleges he was exposed to ETS while incarcerated in USP-Pollock. Defendants do not dispute that Murrell was exposed to ETS, since they admit inmates violated the prohibition against smoking outside of designated areas (See Doc. Item 117). Although defendants argue they should not be held liable for the disciplinary violations of other inmates, Murrell contends defendants failed to

take sufficient steps to actively enforce the smoking ban; apparently, the punishment for inmates found smoking in a non-designated area was a reprimand, with sanctions imposed if deemed necessary (Doc. Item 117).

As discussed above, to show he was exposed to unreasonably high levels of ETS, Murrell must provide statistical and scientific evidence to support the objective component of his burden of proof. The court takes judicial notice, pursuant to Fed.R.Civ.P. rule 201,[3]

---

[3] The court may take judicial notice at any stage of the proceeding, including on a motion for summary judgment. Fed.R.Evid. rule 201(f); Brown v. Lippard, 2006 WL 3598524 (5th Cir. Dec. 12, 2006).
In a similar case, the court in Fisher v. Caruso, 2006 WL 2711807, 12 (E.D.Mich.), modified, 2006 WL 2990318 (E.D.Mich. 2006), stated:
> "The court takes judicial notice that the Surgeon General has recently concluded that ventilation is insufficient to address the health risks posed by ETS. U.S. Department of Health and Human Services, The Health Consequences of Involuntary Exposure to Tobacco Smoke: A Report of the Surgeon General--Executive Summary, available at http://www.surgeongeneral.gov/library/secondhandsmoke/report/executivesummary.pdf (last visited September 21, 2006). Viewing the facts in the light most favorable to Plaintiff, the court acknowledges the report's conclusion that '[s]eparating smokers and nonsmokers in the same airspace is not effective, nor is air cleaning or a greater exchange of indoor with outdoor air. Additionally, having separately ventilated areas for smoking may not offer a satisfactory solution to reducing ... exposures.' Id. at i. The report further concludes that 'exposure to secondhand smoke remains an alarming public health hazard.' Id. at iii. The court concludes that the recent Surgeon General Report satisfies the evidentiary standard of Federal Rule of Civil Procedure 201. ...Accordingly, a reasonable fact finder could conclude that housing Plaintiff in a facility where the non-smoking policy is consistently

that the United States Surgeon General's June 2006 report concluded that scientific evidence shows there is no safe level of or exposure to second hand smoke.[4]  Of course, defendants may dispute the

---

<blockquote>
and strictly enforced would be the sole efficacious means to prevent a further serious risk of harm to Plaintiff."
</blockquote>
See also, Scott v. Hollins, 2006 WL 1994757, *6 (W.D.N.Y. 2006) ("A rational fact-finder could conclude that Drs. Grabo and Augustin would have been on notice of the dangers of ETS as early as 1986, the date of a report of the United States Surgeon General indicating that ETS can cause lung cancer in healthy non-smokers. ...For a medical doctor to state that in 1995 and 1996 he was unaware of the dangers of ETS is simply incredible."); Warren v. Keane, 937 F.Supp. 301, 305-306 (S.D.N.Y. 1996), aff'd, 196 F.3d 330 (2d Cir. 1999) ("In their Memorandum of Law in Response to Defendants' Motion for Summary Judgment, plaintiffs specifically reference a 1986 report by the United States Surgeon General warning of the dangers of ETS. A rational fact-finder could infer from such a report, which would be admissible as an exception to the hearsay rule, that defendants were on notice as to the dangers of ETS. See Fed.R.Evid. 803. Indeed, a rational fact finder could further accept the smoking policy with respect to problem areas at Sing Sing, to some extent, as an admission by defendants as both to the dangerousness of ETS and their awareness of such danger.")

[4] The Surgeon General summarized his July 2006 report, at http://www.surgeongeneral.gov/news/speeches/06272006a.html, as follows:
<blockquote>
"The Surgeon General's Report that we are releasing today, The Health Consequences of Involuntary Exposure to Tobacco Smoke, documents beyond any doubt that secondhand smoke harms people's health. In the course of the past 20 years, the scientific community has reached consensus on this point.

\*   \*   \*

"I would like to draw your attention to several new conclusions that I have reached due to overwhelming scientific evidence.
"Secondhand smoke exposure causes heart disease and lung cancer in adults and sudden infant death syndrome and respiratory problems in children.
"There is NO risk-free level of secondhand smoke exposure, with even brief exposure adversely affecting
</blockquote>

Surgeon General's report and conclusions pursuant to the procedures set forth in Fed.R.Civ.P. rule 201.[5]

---

> the cardiovascular and respiratory system.
> "Only smoke-free environments effectively protect nonsmokers from secondhand smoke exposure in indoor spaces.
> "Finally, the Report concludes that, while great strides have been made in recent years in reducing nonsmoking Americans' secondhand smoke exposure, millions of Americans continue to be exposed to secondhand smoke in their homes and workplaces.
>
> \* \* \*
>
> "We know that secondhand smoke harms people's health, but many people assume that exposure to secondhand smoke in small doses does not do any significant damage to one's health. However, science has proven that there is NO risk-free level of exposure to secondhand smoke. Let me say that again: there is no safe level of exposure to secondhand smoke.
>
> "Breathing secondhand smoke for even a short time can damage cells and set the cancer process in motion. Brief exposure can have immediate harmful effects on blood and blood vessels, potentially increasing the risk of a heart attack. Secondhand smoke exposure can quickly irritate the lungs, or trigger an asthma attack. For some people, these rapid effects can be life-threatening. People who already have heart disease or respiratory conditions are at especially high risk."

[5] In <u>Fisher v. Caruso</u>, 2006 WL 2711807 (E.D.Mich. 2006), modified in other part, 2006 WL 2990318 (E.D.Mich. Oct 18, 2006), the court took judicial notice, pursuant to Fed.R.Civ.P. rule 201, of the Surgeon General's 2006 report concluding that ventilation is insufficient to address the health risks posed by ETS, stating "the Court acknowledges the report's conclusion that '[s]eparating smokers and nonsmokers in the same airspace is not effective, nor is air cleaning or a greater exchange of indoor with outdoor air. Additionally, having separately ventilated areas for smoking may not offer a satisfactory solution to reducing... exposures." The court noted the report further concluded that exposure to secondhand smoke remains an alarming public health hazard. The court concluded the 2005 Surgeon General Report satisfied the evidentiary standard of Fed.R.Civ.P. rule 201.

The Surgeon General's reports on smoking and tobacco have

also been held admissible in federal court pursuant to the public records hearsay exception in Fed. Rules of Evid. rule 903(8), since the reports are prepared pursuant to the Surgeon General's legal obligation "to report new and current information on smoking and health to the U.S. Congress." Boerner v. Brown & Williamson Tobacco Co., 394 F.3d 594, 600 (8th Cir. 2005). See also, Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 109 S.Ct. 439 (1988)("factually based conclusions or opinions [in investigative reports] are not on that account excluded from the scope of Rule 803(8)(C)"); 2 McCormick on Evidence, § 296(C) Investigative Reports (6th ed.) (citing Boerner).

Federal judges have also taken judicial notice of the Surgeon General's reports pursuant to Fed. Rule of Evid. 201. U.S. v. Sauls, 981 F.Supp. 909, 920 (D.Md. 1997), citing Clemmons v. Bohannon, 918 F.2d 858, 865-868 (10th Cir. 1990), vac'd on other grounds, 956 F.2d 1523 (10th Cir. 1992); Reynolds v. Buck, 833 F.Supp. 518, 519 (E.D.Pa. 1993). See also, Spain v. Brown & Williams Tobacco Company, 363 F.3d 1183 (11th Cir. 2004) (holding tobacco users aware of risks of consuming tobacco products due to Surgeon General's warning in 1965).

In United States v. Philip Morris USA, Inc., 449 F.Supp.2d 1 (D.D.C. 2006), the federal government conducted, at great expense, a civil prosecution under RICO against the dominant members of the tobacco industry, alleging fraud and a conspiracy to deceive American public about health effects of smoking and environmental tobacco smoke, addictiveness of nicotine, health benefits from low tar "light" cigarettes, and manipulation of the design and composition of cigarettes in order to sustain nicotine addiction. The federal government sought disgorgement of the tobacco companies' profits traceable to cigarette sales to addicted youths between 1971 and 2001--an estimated 289 billion dollars--to repay health expenditures the federal government had paid or would pay to treat tobacco-related illnesses. After a nine month trial, the district court held the defendants liable under civil RICO and entered an order prohibiting the use of descriptors such as "light," "mild," and "low tar," enjoining defendants from making misleading statements about their products in the future, directing defendants to issue corrective statements to clear up their prior misrepresentations, requiring defendants to be more transparent by maintaining document depositories and websites, and awarding costs to the government.

In Knight v. City of Tupelo, 2006 WL 3741879, *6 (N.D.Miss. 2006), plaintiffs filed a complaint seeking temporary and permanent injunctions and a declaratory judgment on the grounds that a city-wide smoking ban ordinance enacted in the city of Tupelo, Mississippi violated the state and federal constitutions.

Because this court will find that Murrell fails to meet the subjective component of his burden of proof, it is assumed for purposes of this motion that the scientific evidence in the Surgeon General's 2006 Report meets the objective component of Helling, as well as Helling's requirement of a showing that society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk, as also set forth in the Surgeon General's report.[6] Therefore, the court will turn next to consideration of the subjective component of Murrell's burden of proof.

---

The district court found the scientific community has established beyond doubt that smoking is hazardous to both the smoker and his neighbors and that the government and public bear the consequences of tobacco usage through higher health and related costs. The court held the governmental interest in protecting the general public from further health risks clearly outweighs any alleged chilling of individual rights to smoke in public, and upheld the ordinance.

In Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1305-1306 (5th Cir. 1991), the Fifth Circuit held a HUD report was admissible under Rule 803(8), explaining that, while Rule 803 is concerned with hearsay and hearsay is excluded because of the general distrust of out-of-court declarants, Congress has ruled there is a presumption that this distrust should generally not apply to public officials doing their legal duties. See also, Matter of Longstaff, 716 F.2d 1439 (5th Cir. 1983), cert. den., 467 U.S. 1219, 104 S.Ct. 2668 (1984)("that homosexuality is no longer considered a psychopathic condition is established by the opinion of the government's highest medical officer, the Surgeon General").

[6] The Surgeon General's report states in conclusion, "Since 1986 the attitude of the public and social norms around secondhand smoke exposure have changed dramatically to reflect a growing viewpoint that the involuntary exposure of nonsmokers to secondhand smoke is unacceptable."

## 2. Subjective Component

When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs, e.g., food, clothing, shelter, medical care, and reasonable safety, it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him but from the limitation which it has imposed on his freedom to act on his own behalf. Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996), and cases cited therein. The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. Hope v. Pelzer, 536 U.S. , S.Ct. (June 27, 2002), citing Trop v. Dulles, 356 U.S. 86, 100 (1958). The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Among unnecessary and wanton inflictions of pain are those that are totally without penological justification. In making this determination in the context of prison conditions, a court must ascertain whether the officials involved acted with deliberate indifference to the inmates' health or safety. We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious. Hope v. Pelzer, 536 U.S. 730, 737-738, 122 S.Ct. 2508,

2514-2515 (2002), and cases cited therein.

The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994). A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006), citing Domino v. Tex. Dept. of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

Murrell alleges Warden Casterline and Warden Tapia "ordered and approved the selling of tobacco products in the prison commissary," established a policy of housing smoking and non-smoking inmates in the same housing units and ordered the staff members to carry out the policy. Murrell contends the facts that tobacco products are sold at USP-Pollock and other inmates are permitted to smoke violate his right to a "smoke-free environment." Murrell submitted the policies which show that specific housing units are designated as smoke-free and that inmates have a right to a smoke-free living areas (Doc. Item 1, Ex. 22). Murrell contends his grievances made the wardens aware that the smoking policies were not being enforced.

Murrell also contends he complained of the smoking violations

13

to defendants Phillips, Jefferson, Pike, Aycock, Cannon, Hatchett and Gremillion, making them aware both personally and through grievances of the problems the smoke was causing him, and that they were deliberately indifferent to his complaints and failed to either enforce the smoking policies or ban tobacco products at USP-Pollock.

Murrell contends in his statement of undisputed facts that he was told by the medical staff that he should avoid tobacco smoke due to his chronic high blood pressure, which was exacerbated by ETS (Doc. Item 125). Murrell also states in his statement of undisputed facts that his medical records upon arrival at USP-Pollock did not show a history of "prior complaints to medical staff as to exposure to ETS" (Doc. Item 125). Murrell states the defendants' sold tobacco products in the prison commissary, were aware that inmates smoked tobacco products in all areas of the prison, and implemented and maintained a policy of forcing Murrell and other nonsmoking inmates to live in the same housing units as inmates who smoked tobacco (Doc. Item 125, Statement of Undisputed Facts). Murrell shows in his statement of undisputed facts that he complained in the prison infirmary of migraine headaches from about June 14, 2002 through May 6, 2005 (Doc. Item 125, Statement of Undisputed Facts), and that P.A. Penson[7] concluded that Murrell's medical condition was the result of his exposure to environmental tobacco smoke and the medication Murrell was taking for high blood pressure, and

---

[7] Presumably, "P.A." stands for "physician's assistant."

14

recommended Murrell avoid ETS (Doc. Item 125, Statement of Undisputed Facts).

P.A. Penson, who treated Murrell in the infirmary for migraine headaches from 2002 through 2004, advised Murrell to avoid ETS (Doc. Item 125, Exs.). The headaches caused by ETS were also noted by P.A. Valesquez and P.A. Johnson from 2002 through 2004 (Doc. Item 125, Exs.). On June 14, 2004, Dr. E. Tan found that Murrell's headaches were probably caused by an allergic reaction to tobacco smoke (Doc. Item 125, Exs.).

Murrell also submitted affidavits from two former USP-Pollock inmates who both describe in detail how smoking area regulations were not enforced at USP-Pollock and were violated by both inmates and BOP staff members (Doc. Item 125, Pl. Ex., App. 13 & 14).

The Bureau of Prisons promulgated Program Statement P1640.04 (http://www.bop.gov.), which includes new Rules 551.161 and 551.162, effective July 15, 2004, banning all indoors smoking at BOP facilities (except for perimeter towers manned by only one person or for use in an authorized religious activity), designating only outdoor smoking areas for staff, visitors, and inmates, and ordering provision for smoking cessation programs for both staff and inmates. Although defendants allege in their statement of uncontested facts (Doc. Item 117) that the policy banning indoors smoking was in effect at USP-Pollock while Murrell was incarcerated there from 2002 through 2005, it is clear that the 2004 version of the policy was

15

only in effect since mid-2004. Defendants also show in their statement of uncontested facts that, during the period of Murrell's incarceration at USP-Pollock, approximately 70 inmates were disciplined for violating the smoking policy. In Warden Casterline's 2003 response to Murrell's complaint concerning violations of the no-smoking policy in the housing units, the warden admitted that "violation of institution rules is an unfortunate reality in virtually all areas of the institution's operation," but stated the staff was taking disciplinary action against any inmates caught violating the rules and told Murrell that it was not feasible to remove all inmates who smoke from Murrell's cellblock (Doc. Item 125, Exs. Appx. 3). Also, in a January 3, 2003, response to Murrell's appeal of his grievance (Doc. Item 1, Pl.'s Exs.), Regional Director Ronald G. Thompson stated "However, it is the responsibility of individual inmates to adhere to established smoking regulations. Inmates who violate smoking regulations are subject to disciplinary sanctions. Furthermore, should you encounter inmates who are inappropriately smoking in non-smoking areas, you should make staff aware of those violations."

Also significant is the May 18, 2005, Memorandum from Warden Fredrick Menifee to all USP-Pollock inmates, which states (Doc. Item 125, Pl. Ex. Appx. 15), "Due to agency concerns regarding exposure to second-hand smoke and nationwide litigation involving both government agencies and the private sector," the designated smoking

16

areas were changed to only six areas and smoking outside any corridor doors is no longer allowed.

Murrell has failed to show that defendants were deliberately indifferent to his serious medical needs. The Surgeon General's statement regarding the dangers of exposure to second hand smoke at any level was not issued until 2006. Therefore, the failure to have non-smoking cell-blocks at USP-Pollock did not violate contemporary standards of decency, and the fact that policies were implemented in 2004 to prohibit indoor smoking indicates that defendants were not deliberately indifferent to the dangers of second-hand smoke generally or to any of the inmates' serious medical needs. It is also apparent from defendants' 2003 responses to Murrell's grievances that some sort of smoking policy was in effect at that time (although defendants have not provided that policy to the court), which further indicates defendants were not deliberately indifferent to exposure to second hand smoke at any time during Murrell's incarceration in USP-Pollock. Defendants acknowledge that violations occurred, but show they were active in disciplining inmates caught violating the smoking regulations. Murrell's hypertension could have been aggravated by exposure to second hand smoke and his frequent, severe headaches appear to have been caused by exposure to tobacco smoke, but Murrell has not alleged or shown that he was placed in the same cell as a smoker. Although inmates apparently smoked in Murrell's cellblock, at least until the more

17

restrictive 2004 smoking policy went into effect, the prison officials were not "deliberately indifferent" to Murrell's problem. Murrell was afforded medical care and medication for his headaches as well as his hypertension. The defendants' failure to clear Murrell's cell block of all inmates who smoked, and create a non-smoking cell block, is insufficient to prove "deliberate indifference" to Murrell's serious medical needs. Moreover, although Murrell alleges the 2004 ban on smoking indoors was frequently violated, he does not dispute the fact that defendants disciplined about 70 inmates for smoking-ban violations before he left USP-Pollock (See Doc. Item 117, Exhibits).

Therefore, Murrell has failed to prove the subjective component of his burden of proof showing defendants were deliberately indifferent to his serious medical needs. Since there are no genuine issues of material fact on this issue which would preclude a summary judgment, defendants' motion for summary judgment should be granted.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment be GRANTED and that Murrell's action against all remaining defendants be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from

service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this ____ day of January, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE